# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

TACHICA CALLAHAN,
    *Plaintiff*,

v.

CITY OF NEW HAVEN BOARD OF
EDUCATION,
    *Defendant.*

No. 3:17-cv-00617 (JAM)

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Tachica Callahan worked for the City of New Haven's public schools for five years before defendant City of New Haven Board of Education fired her in 2010 because of chronic attendance and tardiness problems. In August 2014, Callahan applied for a paraprofessional position with the Board, and she was hired yet again—but only for a few weeks before the Board's human resources department realized that she had previously worked for the school system and been terminated. On that basis, the Board fired her again.

Callahan contends, however, that the Board discriminated against her for the proverbial kitchen sink of reasons—because of her race, because of her sex, because of her age, because of her marital status, and because of the fact that she had prior criminal convictions. Callahan also throws in a sponge of retaliation—that the Board fired her to retaliate for the fact that Callahan's mother (also coincidentally an employee of the New Haven school system) had filed discrimination complaints.

The Board has moved for summary judgment. It argues that only after Callahan had been hired in 2014 did it figure out that she had previously been fired in 2010 and so terminated her on that basis. I conclude on the basis of the parties' respective statements of material fact that

there is no genuine dispute of fact that the Board's account is correct and that it is entitled to summary judgment as a matter of law. I will therefore grant the Board's motion for summary judgment.

## BACKGROUND

Plaintiff Tachica Callahan has filed this action against defendant City of New Haven Board of Education. I take the facts pertinent to the Board's motion for summary judgment as follows principally from the parties' Local Rule 56(a) statements.[1]

Tachica Callahan is an unmarried African-American woman who was born in 1982. Docs. #57 at 1 (¶ 3); #66-1 at 1 (¶ 3). Callahan worked for the Board as a paraprofessional teacher's aide at several New Haven public schools from 2005 until the Board terminated her employment in April 2010. Docs. #57 at 1-2 (¶¶ 2, 6); #66-1 at 1-2 (¶¶ 2, 6).

While Callahan was working for the Board, she was convicted of crimes involving breach of the peace and assault in 2005 and 2006. Docs. #57 at 1 (¶ 3); #66-1 at 1 (¶ 3). The Board does not have a policy of precluding employment to people who have criminal backgrounds. Docs. #57 at 1-2 (¶ 5); #66-1 at 1-2 (¶ 5). All the same, the Board contends that that from 2005 to 2010, Callahan was frequently absent, missing multiple days of work. Doc. #57 at 2 (¶ 7). The Board also contends that her evaluations showed that her attendance needed improvement, and that the Board progressively disciplined Callahan for numerous instances of tardiness and absences—including multiple written warnings and suspensions without pay. *Ibid.* (¶¶ 8-10).

Callahan denies these allegations, citing only to the same exhibits as the Board, and not indicating which evidence negates the Board's contentions. *See* Doc. #66-1 at 2 (¶¶ 7-10). The

---

[1] After submitting her first Local Rule 56(a)(2) statement, Callahan submitted a motion to file an amended statement. *See* Docs. #60; #66-1. Although this motion has been the subject of some dispute by the parties, I will grant this motion in light of Callahan's *pro se* status and the lack of any resulting prejudice to the Board.

Board's exhibits show extensive evidence of chronic absences, poor evaluations, and disciplinary measures against Callahan. *See* Doc. #56 at 36-48, 58, 66, 68-69, 73, 77-78, 81-89, 112 (¶ 10).

In short, the record supports the Board's position, and Callahan does not give any indication of how the same evidence refutes those facts. As a self-represented litigant, Callahan received the mandatory notice that must be served on a self-represented litigant of the requirements of Fed. R. Civ. P. 56 and D. Conn. L. Civ. R. 56, *see* Doc. #58, and therefore I deem the Board's statements of fact admitted pursuant to D. Conn. L. Civ. R. 56(a)(3).[2]

As this record shows, the Board's progressive disciplinary measures included multiple steps. The Board first tried to accommodate Callahan by permitting her to take a leave of absence in early 2006, then transferred her to a school with a later start time, then referred her to an employee assistance program, and then allowed her to transfer yet again to the school that her child attended. Doc. #57 at 2 (¶ 11).[3]

On October 23, 2009, Callahan and the Board entered into a "last chance" settlement agreement. Docs. #57 at 3 (¶ 14); #66-1 at 3 (¶ 4). The last chance agreement stipulated that Callahan could return to work after a suspension and that she needed to report to work on time each day through the end of the school year. Docs. #57 at 3 (¶ 15); #66-1 at 3 (¶ 15).

---

[2] Nor is Callahan a stranger to federal litigation in general. She is a plaintiff in three other cases in the District of Connecticut. *See Callahan v. ICare Health Network et al*, No. 3:19-cv-01679-JAM (D. Conn. 2019); *Callahan v. Human Resource, Department of et al*, No. 3:18-cv-00488-JAM (D. Conn. 2018); *Callahan v. Gateway Community College*, No. 3:17-cv-00618-JAM (D. Conn. 2017).

[3] Although Callahan again largely denies these factual allegations, she again does not cite to any evidence apart from general citations to the Board's exhibits, *see* Doc. #66-1 at 2-3 (¶¶ 12-13), which again reflect the accuracy of the Board's statements of fact regarding Callahan's disciplinary history. *See* Doc. #56 at 38-48, 57-58, 65-69, 72-73, 76-89, 112 (¶ 10). As with the Board's previous statements of fact regarding Callahan's employment history, I deem these to be admitted.

Around April 13, 2010, the Board terminated Callahan for continued absenteeism. Docs. #57 at 3 (¶ 16); #66-1 at 3 (¶ 16). She was in breach of the last chance agreement. Docs. #57 at 3 (¶ 19); #66-1 at 4 (¶ 19).[4]

Callahan did not file any discrimination complaints arising from her 2010 termination. Docs. #57 at 3 (¶ 18); #66-1 at 4 (¶ 18). Callahan's mother was also a Board employee, and some years later in February 2013 her mother filed a complaint against the Board with the Connecticut Commission on Human Rights and Opportunities ("CHRO") for reasons not shown to be related to Callahan's firing in 2010. Doc. #56 at 112-13 (¶ 15).

In August 2014, Callahan applied for a part-time paraprofessional position in the New Haven public schools. Docs. #57 at 3 (¶ 20); #66-1 at 4 (¶ 20). The Board contends that on August 29, Early Childhood Director Tina Mannerino—who was a 50-year old married white woman with no criminal history—hired Callahan as a part-time paraprofessional at Wexler Grant Elementary School. Doc. #57 at 4 (¶ 21). According to the Board, Mannerino knew about Callahan's previous employment applications, age, sex, race, marital status, and prior criminal history. *Ibid.* (¶ 22). But Callahan denies this account, arguing that it was the Board's human resources department that made the August 29 hiring decision, that the human resources department was aware of her application details, and that the human resources department had assigned her to the same department where her mother worked. Doc. #66-1 at 4 (¶¶ 21-22). Here, however, Callahan supports this denial by citing generally to the same evidence as does the Board—a CHRO factfinding report that supports the Board's position. *See* Doc. #56 at 111 (¶ 4). Because this report is admissible evidence that supports the Board's factual contentions and

---

[4] Although Callahan denies that she violated the agreement, she again cites only generally to the Board's exhibits, *see* Doc. #66-1 at 4 (¶ 19), which in turn support the Board's account, *see* Doc. #56 at 81-84. So as with the rest of Callahan's 2005-2010 employment history, I deem these facts admitted.

4

because Callahan does not point to any other evidence supporting her denial, I deem these facts admitted in the Board's favor.[5]

Callahan and the Board agree that while Callahan was working from August to September 2014, no employee or agent of the Board ever made any remarks related to her age, sex, race, or marital status. Docs. #57 at 5 (¶ 34); #66-1 at 6 (¶ 34).

The Board's human resources department did not review Callahan's application until around September 16, 2014, some weeks after Callahan had already started working. Doc. #57 at 4 (¶¶ 24-25). The department belatedly realized that Callahan was a former employee who had been fired following a breach of a last chance agreement in 2010. *Ibid.* The Board then terminated Callahan's employment because she had been fired before. Although Callahan denies these facts, I will credit them in the Board's favor because Callahan's denial rests again on the same evidence as the Board—the CHRO report finding in the Board's favor. *See* Docs. #56 at 111 (¶ 5); #66-1 at 5 (¶¶ 24-25).[6]

Board officials Donna Aiello and Valerie Brown were the decision-makers in terminating Callahan in 2014. Doc. #57 at 4 (¶ 26); #66-1 at 5 (¶ 26). In 2014, Brown was a 54-year-old

---

[5] At summary judgment, I may only consider evidence that would be admissible at trial. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). Although some courts in this district have expressed reservations about the heavy use of CHRO factfinding as trial evidence, *see, e.g.*, *Doe v. Univ. of Conn.*, 2013 WL 4504299, at *16-*19 (D. Conn. 2013) (collecting and discussing cases), as public records, factual findings by an agency like the CHRO "are presumptively admissible absent 'information or other circumstances [that] indicate lack of trustworthiness.'" *Keene v. Hartford Hosp.*, 208 F. Supp. 2d 238, 242 (D. Conn. 2002) (quoting *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000)). Callahan casts vague aspersions on the integrity of the report, *see* Doc. #67 at 8-9, but she does not ask to preclude any evidence based on the report, and indeed cites to it herself in her Rule 56(a)(2) statement. Moreover, the CHRO report is at least partially corroborated by other evidence, including as to its account of Callahan's 2005-2010 work history, and its description of Brown's testimony as to why Callahan was fired. *See* Doc. #56 at 110-11 (¶¶ 2-3), 113 (¶ 16), 118 (¶ 31). As such, I conclude that CHRO factfinding constitutes admissible evidence for purposes of summary judgment.

[6] Callahan's employment application in August 2014 stated that she had previously been employed by "the City of New Haven or its Board of Education," but it answered "No" to the following question: "Have you ever had your teaching contract non-renewed by a school district?" Doc. #59-1 at 32. This disclosure was not enough to create a genuine fact issue that the Board's human resources department was aware upon her hiring that she had previously worked for and been fired by the Board of Education.

5

African-American married woman with no criminal history, while Aiello was a 56-year-old white single woman with no criminal history. Docs. #57 at 5 (¶ 27); #66-1 at 5 (¶ 27). The Board contends that although Aiello and Brown knew about the nature and timing of Callahan's criminal convictions when they decided to fire her, those facts were not a significant factor in their decision. Doc. #57 at 5 (¶ 28). Rather, the Board says, Aiello and Brown based their decision to terminate Callahan on the basis of the discipline issued to her during her first period of employment. *Ibid.* (¶ 29).

Although Callahan flatly denies this, she provides no explanation and cites (again) to the very same evidence relied on by the Board. *See* Doc. #66-1 at 6 (¶¶ 28-29). That evidence includes the CHRO report agreeing with the Board, *see* Doc. #56 at 111 (¶¶ 4, 8-9), as well as an affidavit from Brown stating that "Callahan's prior employment history, which included absences, tardiness, and a violated Last Chance agreement, was a significant factor in her termination in or around 2014," *id.* at 118 (¶ 31).

The Board goes on to claim that it typically does not rehire employees terminated for violating last chance agreements, Doc. #57 at 5 (¶ 30), typically does not provide termination paperwork to at-will employees, *ibid.* (¶ 31), and that it is not atypical for Board employees to start working before their application is reviewed by the human resources department, *ibid.* (¶ 32). Although Callahan again disputes these claims, she again does not cite to any evidence to support her assertions, including any evidence from the CHRO report—which the Board relies on, and which supports the Board's position. *See* Docs. #66-1 at 6 (¶¶ 30-33); #56 at 112 (¶¶ 10-12).

Several months then passed. Callahan's mother filed another CHRO complaint on December 2, 2014. Doc. #56 at 112-13 (¶ 15). Callahan herself then filed a CHRO complaint on

March 9, 2015, alleging that the Board had discharged her on the basis of age, sex, race, marital status, prior criminal convictions, and retaliation. Docs. #57 at 6 (¶ 40); #66-1 at 7 (¶ 40). Callahan received notice of her right to sue in January 2017. Docs. #57 at 6 (¶ 41); #66-1 at 7 (¶ 41).[7]

Callahan filed this lawsuit in April 2017. *See* Doc. #1. She has asserted claims for disparate treatment on the basis of race and sex under Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, *et seq.*; disparate treatment on the basis of marital status, age, and a criminal conviction under CFEPA; racial discrimination under 42 U.S.C. §§ 1981, 1983; and retaliation under Title VII, CFEPA, and 42 U.S.C. §§ 1981, 1983.[8] The Board has moved for summary judgment on Callahan's claims in their entirety.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or

---

[7] Callahan asserts that additional facts preclude summary judgment, but has generally not put forward her own evidence to substantiate these facts. *See* Doc. #66-1 at 7-11 (citing only to her complaint and at times the Board's submissions). Callahan has also filed, as an attachment to her initial brief in opposition to summary judgment, numerous exhibits that are neither distinguished nor referenced in her Rule 56(a)(2) statements. *See* Doc. #59-1. These exhibits consist of email and administrative documents, *see id.* at 5-7, Callahan's job applications, *id.* at 15-41, certification of employability documents from the Board of Pardons and Paroles, *id.* at 42-43, and numerous documents from Callahan's CHRO proceeding, *see id.* at 44-76. I have considered these documents but they are not germane to the issues in dispute between the parties except as to Callahan's 2014 employment application.
[8] Callahan has abandoned her claim under the Equal Pay Act. *See* Doc. #67 at 5.

to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).

### *Title VII, section 1981, and CFEPA discrimination—race, sex, marital status, and age*

Callahan claims that the Board discriminated against her on the basis of race in violation of section 1981, Title VII, and CFEPA; sex in violation of Title VII and CFEPA; and marital status and age in violation of CFEPA. All of these claims are analyzed under the familiar *McDonnell-Douglas* three-part burden shifting standard. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (Title VII); *Khanna v. MUFG Union Bank, N.A.*, 785 F. App'x 15 (2d Cir. 2019) (section 1981); *Craine v. Trinity Coll.*, 259 Conn. 625, 637 (2002) (CFEPA).

First, Callahan must show the following facts to establish a *prima facie* case: (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that the circumstances of the adverse action give rise to an inference of discrimination. *See, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). A plaintiff's burden to state a *prima facie* case is "not onerous" and has been frequently described as "minimal." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016). Although the Board has contested that Callahan was fired in circumstances that could even give rise to an inference of discrimination, *see* Doc. #55 at 21, because Callahan is undoubtedly a member of various protected classes and suffered an adverse employment action, *see id.* at 21, 28-29, I will assume for the purposes of this ruling that Callahan has made a *prima facie* case of discrimination and proceed to the next stages of the *McDonnell-Douglas* analysis.

At the second stage of the *McDonnell-Douglas* analysis the burden shifts to the defendant to articulate a legitimate, non-discriminatory basis for termination. *See Walsh*, 828 F.3d at 75. The Board has done so here. The Board has articulated that it fired Callahan in 2014 because she had violated her last chance agreement in 2010, and also because it had realized that she had been consistently tardy and absent during that previous term of employment. *See* Doc. #55 at 24-26; *see also Klaper v. Cypress Hills Cemetery*, 2014 WL 1343449, at *6 (E.D.N.Y. 2014) (breach of last chance agreement introduces a legitimate, nondiscriminatory reason), *aff'd*, 593 F. App'x 89 (2d Cir. 2015); *Ghaly v. U.S. Dep't Agric.*, 739 F. Supp. 2d 185, 200 (E.D.N.Y. 2010) (concerns about tardiness and attendance are a legitimate, nondiscriminatory reason, which can even prevent plaintiff from making out a *prima facie* showing).

For the third stage of the analysis, the burden shifts back to Callahan to prove that the Board's justification was in fact a pretext for discrimination. *See Vega*, 801 F.3d at 83. In showing pretext, "a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus." *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156-57 (2d Cir. 2010). The Second Circuit has explained that at this stage, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Walsh*, 828 F.3d at 75.

Callahan has not met her burden. Between Callahan's prior disciplinary history, Brown's affidavit, the Board's policy against rehiring employees dismissed under last chance agreements, and the other evidence in the CHRO report, there is significant evidence that the Board fired Callahan for the reasons it said that it did. At the same time, Callahan has conceded that nobody at the Board made any remarks regarding her age, race, sex, or marital status. Finally, Callahan

9

does not cite any independent evidence to suggest discriminatory motive in her Rule 56(a)(2) statement, nor do her unmarked and undifferentiated submissions alongside her briefing, *see* Doc. #59-1, appear to contain any evidence of discrimination on the basis of race, sex, age, or marital status.

Finally, even if Callahan means to argue that evidence suggesting she was fired on the basis of a past criminal conviction is evidence of some kind of racial animus, "Title VII . . . do[es] not protect against employment discrimination based upon a prior conviction." *McClarence v. Int'l Union of Operating Engineers Local 14-1413*, 2017 WL 3887883, at *2 (E.D.N.Y. 2017). Accordingly, the summary judgment record does not contain evidence that would allow a reasonable jury to conclude that the Board's claim that it fired Callahan because of her past absences and breach of the last chance agreement is in fact a pretext for discrimination on the basis of race, sex, age, or marital status. While I recognize that Callahan's experience of receiving and then losing her job as a paraprofessional was both frustrating and perhaps speaks to a degree of sloppiness in the Board's hiring practices, the evidence does not create a genuine fact issue to show that the Board fired Callahan for any illegal discriminatory reason. I will therefore grant summary judgment to the Board on Callahan's Title VII and section 1981 discrimination claims in their entirety, and on Callahan's CFEPA claim to the extent it is based on Callahan's race, sex, and marital status.

### *CFEPA discrimination—prior criminal conviction*

Callahan's remaining theory of discrimination under CFEPA is that the Board discriminated against her on the basis of her prior criminal convictions. *See* Doc. #67 at 8-9. CFEPA does prohibit an employer from discriminating against an employee "solely because of a prior conviction of a crime." Conn. Gen. Stat. § 46a-80(a). Callahan claims that Mannerino left

her a voicemail telling her not to return to work because there had been "activity" in connection with her fingerprints, but Callahan claims that she is unable to produce the voicemail. *See* Doc. #66-1 at 8 (¶¶ 43-46). Callahan's evidentiary submission, however, appears to contain a contemporaneous email she wrote that may corroborate the fact of Mannerino's call. *See* Doc. #59-1 at 10.

Ultimately I do not need to resolve whether this evidence is sufficient to raise questions for a jury about why Callahan was fired, because her criminal conviction CFEPA claim is squarely time-barred. Section 46a-82(f) of CFEPA requires that any complaint for a violation of section 46a-80 be filed with the CHRO "within thirty days of alleged act of discrimination." The record shows that Callahan was terminated in September 2014, but she did not file her CHRO complaint until March 2015. *See* Doc. #56 at 99, 109. Callahan waited well beyond 30 days to file her CHRO complaint. At the same time, Callahan has not discussed why any sort of tolling would apply to her case—instead, Callahan's briefing only focuses on various inapposite federal statutes of limitation. *See* Doc. 67 at 32-36. I will therefore grant summary judgment to the Board on the remaining element of Callahan's CFEPA discrimination claim.

### *Title VII, section 1981, and CFEPA retaliation*

Callahan also argues that the Board retaliated against her for supporting her mother's CHRO complaints. *See* Doc. #67 at 42. Claims for retaliation under Title VII are analyzed at the summary judgment stage under the *McDonnell-Douglas* framework, as are similar claims under section 1981 and CFEPA. *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (section 1981); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (Title VII); *Polk v. Sherwin-Williams Co.*, 2019 WL 1403395, at *8 (D. Conn. 2019) (CFEPA). First, the plaintiff must present evidence sufficient to permit a rational trier of fact to find (1) that she

engaged in protected activity under the relevant law—*i.e.*, that she complained of or otherwise opposed some form of discrimination that the relevant legal regime forbids; (2) that the employer was aware of this activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action. *See Zann Kwan*, 737 F.3d at 844. If the plaintiff meets this burden and the defendant then points to evidence of a legitimate, non-retaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is incomplete or merely a pretext for impermissible retaliation. *Id.* at 845.

Callahan's retaliation claim is not precluded by the fact that it was her mother—and not her—that engaged in protected activity. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173–78 (2011). To the contrary, a plaintiff victim may recover for retaliation in response to another person's protected activity if the relationship between the plaintiff victim and the other person was of the type where the action taken against the plaintiff "'might have dissuaded a reasonable worker [in the third person's position] from making or supporting a charge of discrimination.'" *Id*. at 174 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Of course, if this were not the rule, then employers could easily penalize an employee's protected activity merely by striking back at friends or family members who might happen as well to work for the employer.

Ultimately, the plaintiff must prove that retaliation was the but-for cause of the adverse action—in other words, that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action nor actions of the employer." *Zann Kwan*, 737 F.3d at 845 n.5; *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). A plaintiff need not,

however, show that the practices she opposed were actually unlawful. Rather, so long as a plaintiff has a good faith, reasonable belief that she was opposing an unlawful employment practice, she may not be subject to retaliation for making a complaint. *See, e.g.*, *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14-15 (2d Cir. 2013) (*per curiam*) (Title VII).

The record does not support a *prima facie* case of retaliation. Callahan's support of her mother's December 2014 complaint could not have caused the Board to fire her, because she had already been fired in September 2014. Therefore, Callahan's retaliation claim hangs on the argument that the Board retaliated against her for supporting her mother's 2013 complaint. But there is no evidence that the Board even knew about the Callahan's support of her mother in connection with that 2013 complaint. Aiello testified to the CHRO that, because Callahan and her mother have different last names, she was not aware they were related. Doc. #56 at 112-13 (¶ 15). Callahan argues that her job application and fingerprints disclosed this relationship to the Board, *see* Doc. #66-1 at 7 (¶ 37), but even granting Callahan the benefit of this claim, the Board would not know from Callahan and her mother's relationship that Callahan supported her mother's complaint. Moreover, as a matter of causation, the Second Circuit has suggested that a time period of five months between an employee's protected action and an employer's adverse action is the outer limit of the time period that may support a *prima facie* case in ordinary cases. *See Zann Kwan*, 737 F.3d at 845; *see also Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 292 (S.D.N.Y. 2019).

Even if Callahan was able to make a *prima facie* case of retaliation, she would still need to show that the Board's argument that it fired her for her past issues with attendance and tardiness is pretextual. The same evidence supporting the Board's claimed rationale for firing

Callahan applies here as to her claims for discrimination. And just as Callahan has not provided further evidence suggesting that this rationale was false in the context of discrimination, she similarly has not done so in the context of retaliation. Accordingly, I conclude that a reasonable jury could not find that the Board illegally retaliated against Callahan, and so will grant summary judgment to the Board on Callahan's retaliation claims.

## CONCLUSION

For the reasons set forth above, the Board's motion for summary judgment (Doc. #54) is GRANTED. Callahan's motion to amend her Local Rule 56(a)(2) statement (Doc. #66) is GRANTED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 18th day of December 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge